IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JOHN R. BUTLER AND
STEPHANIE BUTLER                                                    PLAINTIFFS

VS.                                         CIVIL ACTION NO. 1:17-cv-0019-DAS

MUELLER COPPER TUBE COMPANY, INC.,
NEW HAMPSHIRE INSURANCE COMPANY, INC.,
AND SEDGWICK CLAIMS MANAGEMENT SERVICE                              DEFENDANTS

**MEMORANDUM OPINION**

This matter arises on competing motions for summary judgment. After considering the matter, the court finds as follows:

**Facts and Procedural History**

Plaintiffs seek to recover damages for alleged bad faith handling of John Butler's workers' compensation claim, which arose on the afternoon of August 22, 2013, when he suffered a crush injury to his right foot during the course and scope of his employment with Mueller Copper Tube Company, Inc. Butler had his right leg amputated below the knee on October 10, 2013. On August 22, 2014, he filed a petition to controvert his workers' compensation claim. Following two years of litigation before the Mississippi Workers' Compensation Commission ("MWCC"), the parties agreed to settle the indemnity, or wage, portion of his claim, while keeping the medical portion open.

At the time of his injury, Mueller had workers' compensation insurance through New Hampshire Insurance Company ("NHI"). Mueller also had a service agreement with Sedgwick Claims Management Service to act as a third-party administrator of Butler's claim. Butler exhausted his administrative remedies before the MWCC, which compelled the employer and

carrier to provide certain medical and indemnity benefits, and filed this action for bad faith delay of benefits.

Plaintiffs seek partial summary judgment on the issues of delay and vicarious liability. Defendants seek summary judgment on all claims and complete dismissal with prejudice.

## Summary Judgment Standard

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citations omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

**Analysis and Discussion**

The Mississippi Workers' Compensation Act is the exclusive remedy available to an injured worker in the state of Mississippi. *Miller v. McRae's Inc.*, 444 So. 2d 368, 370 (Miss. 1984). *See also* Miss. Code Ann. § 71-3-9 ("The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death[.]"). However, "an employee entitled to worker's compensation benefits from her employer has a separate and independent right to recover damages from the employer's worker's compensation insurer because of the insurer's intentional bad-faith refusal to pay compensation when due, which constitutes an independent intentional tort committed by the insurer outside the scope of the worker's employment." *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 621 (5th Cir. 2014) (citing *Southern Farm Bureau Casualty Ins. Co. v. Holland*, 469 So. 2d 55, 56-59 (Miss. 1984)). *Holland* was extended "to allow bad-faith refusal action against employers as well as insurance carriers." *Id.* at 622 (citing *Luckett v. Miss. Wood Inc.*, 481 So. 2d 288, 290 (Miss. 1985)).

> To prove his claim against the employer, the employee would have to show, as he would to prove a claim against the carrier, that there has been "(1) an intentional refusal by the employer to pay with reasonable promptness the insured's claim; and, (2) the absence of any arguable reason for the defendant's refusal to pay with reasonable promptness."

*Toney v. Lowery Woodyards and Employer's Ins. Of Wausau*, 278 F. Supp. 2d 786, 794 (S.D. Miss. 2003). The standard is the same for a claim based on delay of benefits. *See Bullocks v. Gottfried Corp.*, 403 Fed. Appx. 947, 950 (5th Cir. 2010).

NHI and Sedgwick argue that any unreasonable delay in benefits was caused by Plaintiffs' tardiness in submitting documentation or due to the attorney who defended the

underlying workers' compensation claim, David McLaurin.[1] Mueller seconds these arguments and also argues that it fulfilled its statutory duty by securing workers' compensation coverage and that it did not actively participate in the administration of the claim. Plaintiffs seek to impose liability on the defendants through a theory of vicarious liability, arguing that McLaurin acted as Defendants' agent and therefore his actions should be imputed to them. They further argue that Mueller exercised some control over the administration of the claim—above merely granting settlement authority—and that Mueller specifically directed Sedgwick to hire McLaurin.

*Mueller*

Plaintiffs agree that Mueller would, under general circumstances, be entitled to summary judgment. However, Plaintiffs argue, based on a statement made by counsel in NHI and Sedgwick's brief supporting their motion for summary judgment [112], that "Mueller retained the right to select and pay counsel of its choice to represent Mueller and NHI" and that "Mueller exercised this right with respect to Mr. Butler's claim and directed Sedgwick to refer the defense to David McLaurin . . . ."[2] However, there is no evidence to support this contention. Indeed, Plaintiffs concede that they "have been unable to identify an express term within the Mueller Service Agreement providing Mueller with absolute authority to assign defense counsel on qualified claims."[3]

The evidence does, however, show that Mueller asked to be kept abreast of how Butler's claim was proceeding and that a Mueller employee agreed with Sedgwick's direction to

---

[1] Defendants do not concede unreasonable delay, only that *if* unreasonable delay occurred, it was caused by McLaurin.
[2] [Dkt. 112] p. 6.
[3] [Dkt. 117] p. 2.

McLaurin to subpoena medical records in order to evaluate Butler's suicide attempt to determine whether it was compensable as part of the workers' compensation claim.[4] As to Mueller's involvement, Rita Reeder, the Sedgwick adjuster handling Butler's claim, testified during her deposition that Mueller's only involvement was in giving approval for additional settlement authority. Plaintiffs do not allege Mueller was dilatory in granting settlement authority. Reeder testified she did not seek input from Mueller on decisions related to the payment of benefits or the approval of medical care and related bills for treatment, nor did Mueller in any way hinder her handling of the claim. Even assuming Mueller "retained control" over Butler's claims, there is no evidence it exercised that control.

McLaurin likewise testified that he kept Mueller apprised as to the status of Butler's claim, but that Mueller was not involved in decisions regarding payment of benefits, nor did he consult with them regarding claims-handling decisions. While he could not remember who hired him to defend Butler's claim, he noted he had done work for Sedgwick for fifteen years and was handling approximately twelve files for Sedgwick at the time of his deposition.

There being no evidence that Mueller "actively participated in the acts alleged to constitute . . . bad faith" in a manner that constituted "a willful and intentional or malicious wrong" or an "independent intentional tort,"[5] the Court finds that Mueller is entitled to summary judgment and its motion [110] is therefore GRANTED.

---

[4] The employee, Travis Fisher, simply stated, "I agree with Rita[;] I question underlying issues prior to injury." Fisher was agreeing with action Reeder had already requested McLaurin take. There is no evidence this agreement influenced his actions, nor does it support "active participation" on the part of Mueller.

[5] *Toney*, 278 F. Supp. 2d at 794; *Rogers v. Hartford Accid. & Indem. Co.*, 133 F.3d 309, 312 (5th Cir. 1998); *Williams*, 741 F.3d at 621.

<u>NHI and Sedgwick</u>

"[A]n insurer's delaying investigation and payment of a claim can constitute an intentional tort." *Willis v. Allstate Ins. Co.*, 2014 WL 5514160, *15 (S.D. Miss. Oct. 31, 2014) (citing *AmFed Cos., LLC v. Jordan*, 34 So. 3d 1177, 1185 (Miss. Ct. App. 2009)). However, "an insurer's conduct does not amount to gross negligence or an intentional tort as long as the insurer is actively investigating a case." *Id.* (citing *Washington v. Am. Heritage Life Ins. Co.*, 500 F. Supp. 2d 610, 617 (N.D. Miss. 2007)). "Generally, a client's reliance upon advice of his attorney prevents a finding of bad faith." *AmFed*, 34 So. 3d at 1184-85. However, an insurer may be liable if it abdicates its investigation to its attorney and relies on him to perform the administrative functions that are within its purview in evaluating and processing claims. *See id.* at 1185.

In *AmFed*, the adjuster, Cox, asked AmFed's attorney, Bolen, to investigate the underlying claim. *Id.* at 1184. Cox left to Bolen the tasks of verifying the existence of and obtaining a copy of the Commission's order as well as requesting a calculation. *Id.* Bolen waited a month before sending the request, and once received, waited until returning from vacation to forward the calculation to Cox. *Id*. It then took AmFed an additional two weeks to prepare checks based on the calculation. "From the time [claimant] notified AmFed of her lump-sum order, it took seventy-six days—approximately eleven weeks—for AmFed to pay her the benefits she was due." *Id.* While AmFed argued it was entitled to rely on Bolen's advice, the court found "no evidence that AmFed's delay was based upon Bolen's advice. Instead, AmFed abdicated its investigation to Bolen and relied on him solely to perform the administrative functions of verifying that a lump-sum order existed and requesting calculation of benefits." *Id.* Thus, the carrier is not automatically liable for the actions of its attorney by virtue of agency, but

rather is liable for delaying its investigation by making "intentional choices to pass along duties[,] in reckless disregard of the consequences." *Id.*

Plaintiffs claim a bevy of delays occurred in processing the underlying claim. For instance, Reeder filed an incorrect Form B-18, indicating an intent to pay 122.5 weeks of benefits rather than 175. Plaintiffs' counsel raised the issue multiple times with defendants and their counsel, McLaurin. Following a motion to compel, McLaurin notified Reeder to file an amended B-18, indicating 175 weeks of benefits. Reeder filed an amended form two months later. Plaintiffs further claim that at a hearing on a motion to compel, Defendants admitted Parkwood Behavioral Health bills were owed and would be paid, therefore the ALJ did not enter an order compelling payment. Defendants then refused to pay the bill until receiving an itemized invoice. Finally, Plaintiffs claim Defendants simply refused to pay for prescriptions and medical devices or to reimburse mileage until ordered to do so by the ALJ.

Defendants, in turn, argue any unreasonable delays[6] were McLaurin's fault alone, for which they have no liability. They claim Plaintiffs never sought mileage reimbursement from Defendants directly but rather only sent requests for reimbursement to McLaurin, who failed to notify them of the request. Defendants also claim that while notice of the ALJ's oral ruling regarding certain benefits, prescriptions, and medical aids was sent on November 24, 2014, it was not received until January 22, 2015, due to a fax error. Thus, Reeder never had actual notice that a motion to compel had been filed, that it was set for hearing, or that it had been heard until January. Reeder's claim note indicates that she received a letter from McLaurin, but that the last

---

[6] Again, Defendants do not concede that any unreasonable delays occurred, only that *if* there were unreasonable delays, the fault lay with McLaurin.

pages were distorted. There is no indication that she contacted McLaurin to inquire about the content of the distorted pages. Defendants note that while the Form B-18 was initially erroneous, Plaintiff continuously received his weekly benefits payments—and the error was corrected without interrupting payments. As to the Parkwood bills, Defendants claim the bills originally submitted by Parkwood were insufficient for processing and evaluation so they sought a more detailed billing. When Reeder requested an itemized billing, Parkwood refused, absent Plaintiff's written authorization. Plaintiff refused to comply, therefore contributing to the delay.[7]

The parties have thus demonstrated the existence of a genuine issue of material fact as to whether NHI, acting through Sedgwick, unreasonably delayed its investigation of Plaintiff's claim—including whether it abdicated its investigation to its attorney—with no legitimate or arguable reason for the delays. *See AmFed*, 34 So. 3d at 1185. *See also Cospelich v. Hurst Boiler & Welding Co., Inc.*, 2009 WL 10676857, *2 (S.D. Miss. July 7, 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."). Therefore, the motion for summary judgment filed by NHI and Sedgwick, as well as the motion for partial summary judgment filed by Plaintiffs, are DENIED.[8]

**Conclusion**

For the reasons fully explained above,

---

[7] Defendants contrast Parkwood with Methodist Le Bonheur of Olive Branch, which submitted sufficiently detailed billing forms and were promptly paid.

[8] Also before the Court is NHI and Sedgwick's [130] Motion to Strike certain exhibits attached to Plaintiffs' response to Defendants' Motion for Summary Judgment and/or in support of Plaintiffs' Motion for Partial Summary Judgment. No response was filed within the time allotted by the rules, which has long since passed. The Court, having considered the motion, finds that it is well-taken and should be GRANTED as unopposed.

1. Plaintiffs' [106] Motion for Partial Summary Judgment is DENIED.

2. NHI and Sedgwick's [109] Motion for Summary Judgment is DENIED.

3. Mueller Copper Tube Company, Inc.'s [110] Motion for Summary Judgment is GRANTED.

4. NHI and Sedgwick's [130] Motion to Strike is GRANTED.

This case shall PROCEED TO TRIAL.

THIS the 24th day of January, 2018.

                                                  /s/ David A. Sanders  
                                                 UNITED STATES MAGISTRATE JUDGE